Case number 14-5230, Jefferson Morley Appellant v. Central Intelligence Agency. Mr. Bulsar for the Appellant, Mr. Peterson for the Appellee. Thank you, and just to let everybody know, Judge Williams is participating by telephone today, and Judge Ginsburg will consider the cases based on the audio recordings of the arguments. Good morning, Your Honor. Thank you very much. For you and Judge Williams, I'm James H. Bulsar, representing the Plaintiff Appellant, Jefferson Morley. Mr. Morley. I have a question for you. I may as well start right in right now. I think it's clear under our cases that the question of the utility of the information gathered is evaluated ex-ante. Excuse me, I missed the two words there. The value of the information gathered is considered ex-ante. In other words, it's the prospect of some useful information, not whether useful information, interesting information, publicly needed information is obtained. That seems to be clear from David. But in figuring out what information judged ex-ante is of interest, I noticed David says the information David requested about individuals allegedly involved in President Kennedy's assassination serves a public benefit. And I'm trying to figure out what is really intended with allegedly involved. We spoke to someone who alleges that the whole assassination was engineered by Stephen Williams. Does that mean an inquiry, a FOIA inquiry into every activity of Stephen Williams before the assassination date would be covered? I think that would be an insufficient nexus. I reviewed yesterday the oral argument in 2013 at which you were present. Okay, same question then. Similar maybe. But what struck me about it, essentially the issue then was whether or not the district court had complied with the law of the circuit as expressed in Davey. And the court remanded to require him to comply with the law of the circuit. Now, the law of the circuit, Judge Edwards, who was a member of the panel at that hearing, repeatedly expressed the issue in a little bit different terminology than is used in the Davey opinion itself. He referred to the test as being the topic of the request and the purpose of the request as opposed to the contents of the request. And he pointed out that in Davey, the dissenting judge had based his opinion, Judge Randolph, had based his opinion on the contents of the document. I think there's no doubt at this point that you look at the request, four particular documents are delivered. But what I'm trying to figure out is how much of a burden the requester has to show that there was a prospect of something valuable. In other words, everyone agrees that the Kennedy assassination was, A, a terrible event, and, B, something of enormous consequence and thoughts about it, understanding of it, is very important even in modern America. So that's a given. But what I'm trying to inquire is how serious a connection to that event has to be shown to fit within the idea that it has the requisite probability of turning up something of public interest. Well, I thought the hypothetical I gave was clearly beyond the range. I hope so. I would agree to that. I think if it's wholly irrelevant to the controversy, that certainly would disqualify it. But of course you may not know that ex-ante. I mean, that's the problem that Judge Williams' question raises, is that you have no ex-ante whether it's wholly irrelevant. Now, we might all think that it's very unlikely that there was any involvement. Yes, and that's why I think that the liberal standard adopted by Davey is the appropriate standard. In any case, however you try to draw the boundaries on that nexus, it's met here and met here. That may be true. At least we'll assume that for purposes of the question. But I guess the question Judge Williams raises is an important one because we have to ask ourselves about the implications of a regime that we adopt. And we probably want to avoid adopting a regime that's going to open the floodgates in this kind of context. But I wonder if part of, and you tell me since you're in the business of, at least in this particular instance, of formulating FOIA requests. I take it we only get to the question of public interest if somebody substantially prevailed in the first place. Because we're only talking about the fees aspect of the case. Yes. So in order to even get down the road to where we'd ask whether there is public interest in asking whether Steve Williams' association with the Kennedy assassination is something that passes the bar, we'd have to assume a circumstance in which there was a FOIA request made that went to litigation and the requester substantially prevailed. Yes. That's certainly, and that is the first of two things that are mentioned in Davey. The first one is the effect on the litigation. And here the effect on the litigation, the fruit of the litigation was that new information was released. That's one of the changes since this case was last argued in this court is that the CIA and the district court judge now concede that new information was released. Right. And I guess what I'm trying to ask is, is it true, and I just don't know the answer, so that's why I put it to you. Is it true that one check against the possibility that we would have requests that bear an insufficient nexus, one check against that possibility is that it's unlikely that you'd have a situation in which the requester substantially prevailed in the first place. So you'd never get to that question. Yes, that's the first thing. And another thing that I would point out is that the CIA, in responding to the request, in effect held that there was a connection to the JFK assassination because it referred the request, tried to force the requester to refer the request to the National Archives because of its JFK Act collection was there. So the CIA, in its response, assumed that. I would also point out that it's not just the JFK assassination that is at issue here. The beginning of this court's last opinion lays out three or four factual findings that the requester had made a request for JFK assassination records, that he hadn't obtained the records, that records relating to the Kennedy assassination were released as a result. So in a sense, I think this court has already foreclosed that avenue. It has found that these records were related to the Kennedy assassination. The question is whether the Kennedy assassination is a significant historical event. I don't think that's the dispute. I'm sorry, I'm having a little difficulty hearing you. I think everyone agrees that it was an incredibly important historical event. But the question is how close does the relationship between the request and the event have to be? My guess is that something of a sliding scale, that is to say something digging deeper into the Kennedy administration probably gets more slack than digging deeper into the BP oil spill. Yes, I think that's – did you say more flack or more slack? More slack. More slack. In other words, a lower probability of hitting any Patriot is acceptable. I think that is – I think that's true because the stakes are very great. Basically, you have a situation in which there has been investigation after investigation that has discounted the original findings of the Warren Commission. And you have numerous questions arising as a result of that. The activities of Mr. Joannides are related to that because one of the things that was learned after the Warren Commission report was that it had never inquired about the assassination plots against Castro. Here there is a nexus because the request is directed at Joannides and he was in charge of a Cuban exile group that was responsible for plotting those assassination efforts against Castro. And he was also involved directly with the House Select Committee on Assassinations. He kept information from the House Select Committee on Assassinations, including the fact that he was the case officer they were looking for so they could investigate the connections between Lee Harvey Oswald and this Cuban exile group. Can I ask the following question about the point that Judge Williams started with, which is that in applying the public benefit part of the standard, the first prong, we look to the request as it's framed ex ante rather than ex post at what's in fact released. And there's certainly some sense to that because from the perspective of the requester, they don't know what they're going to get until they make the request and the government responds. But in Davey, there's certainly language to that effect, but there was also mention at least of what in fact was released ex post. And I'm just wondering what you think the relevance of the mention in Davey of what in fact was released ex post is if we're only looking at ex ante. I think that the real focus is on the relationship between the documents released and the event. And the documents released there showed that they related to a person who had been charged with conspiring to commit the assassination of President Kennedy Clayshaw. So there was a clear nexus between an obvious matter of public interest, the prosecution of a citizen of the United States for having conspired to assassinate the president, and the documents. There is the same kind of relationship here where you have documents that indicate, extol Jolanides for his accomplishments at times when he was one in 1961, 62 through 64 period when he was involved in running the DRE, the CIA funded exile organization. Right. All of which goes to, and you have arguments to this effect, all of which goes to what in fact was released. Yes. I guess my question is the framing of this public interest, the public benefit criterion could focus on not necessarily what in fact was released, but what was requested at the outset. Because the idea being that the requester doesn't know at the outset what's going to come out of the endeavor because that's why they're asking. Because they don't know what's behind the wall. And so they put in a request. And so I take it part of your argument is we should be looking at what was requested. And there's certainly a lot of language in Davey that would support that frame of reference rather than looking at what was released. I guess my question is, but Davey's not entirely lacking in language that points to what was in fact released after the fact also. It seems to have both. I would agree with that assessment. It does have to seem both. But the holding of the case, I think, is pretty clear that Judge Edwards' summarization of it is, I think, right on the mark. That it is not the contents of the document. It is the nexus between the request and the event. Okay. Thank you. Yes. I have another question, and that is some of these documents were available in the archives for a copying fee of, what, 25 cents a page? It may be. My recollection is it's even more expensive than that now. Even, say, 50 cents. But low compared to lawyer's fees, right? That's the point you made at the last hearing. Yes. And at least insofar as litigation revolved around that issue, doesn't U.S. tax analysts prevent the award of fees for any segregable part of litigation directed to documents that are available in the archives? No, I don't think so. The tax analyst decision, it comes down the way it did because the requester had a very strong direct personal financial interest in obtaining the documents. He was essentially running a subscription service, and he wanted a quick and easy way to get the documents for a private entity that was making money off getting the documents. That's a far cry from the circumstances here, where you can argue that Jefferson Morley had something of a commercial interest, what Judge Edwards referred to as a quasi-commercial interest. But the quasi-commercial interest is still in the favored category of public interest requesters. That quasi-commercial category is not discounted for qualification under the public benefit analysis or under any of the four factors. Well, this is also where the potential distinction between ex-ante and ex-post starts to confuse the mind of it, because I can understand the impetus behind segregating the documents that are available otherwise from another agency from those that are new. But ex-ante, nobody knows. Or at least the requester doesn't know. The situation with the National Archives is that, first of all, there have been new developments since the last hearing with regard to the National Archives. I went into with Judge Williams, I think, in some detail at the last hearing about the procedures for trying to obtain JFK assassination documents at the National Archives. There is no electronic facility for accessing the documents. In fact, there's no – not all of the records that are part of that collection have research identification forms, which are posted on the NARA website. But those are highly unreliable, and what we have learned in recent weeks is that after telling the public for the past several years over great skepticism by myself and others, that they had – the CIA had only withheld 1,100 or 1,176 documents from being released by the deadline of the JFK Act in 2017, that in fact we now know, they've now admitted, that there are thousands upon thousands of documents that are not accounted for that are still being withheld. So the system is unreliable. It can't be trusted. And in this case, when we – the CIA initially told us that there were 78 JFK documents and they were – to go look for them at NARA. But when we got the request, when they first did the search after we got instructions that they were to search, they came back with 88 documents. So the – So is this part – is this going to the point that they benefit from getting documents even with respect to the documents that are already in the public domain in NARA? Yes. It's not just the saving on copying costs. It's that if you were to go over there and do the search yourself, you still wouldn't come up with the same documents that the government has in its possession. Yes. And you would be – you would be reliant upon someone to guide you and try to find the appropriate place to go. And it's very complicated. There are 5 million pages of records there. And there are all kinds of problems with that collection that hopefully at some point we'll be able to get a congressional hearing on. But at the moment, you have to go through this process of you either make a FOIA request in which the agency that – and it's not necessarily the CIA. It could be the State Department or the FBI. The agency has to be responsible for conducting the search. There you've got some handle on the search without having to do it yourself. Right. Okay. Yeah. Thank – That's all I have to say unless you have any further questions. Thank you. Thank you, Your Honor. Good morning, Your Honor. Good morning. May it please the Court, the public benefit factor favors awarding of a petition of attorney's fees when the production of the responsive documents from the FOIA request has been found to have added to the fund of information that the public can use to make the vital political choices. So that formulation focuses on what's, in fact, produced. And if I can just start with where Judge Williams started, which is let's assume that what Davey stands for is the proposition that you look ex ante at what was requested. And I know you may have a disagreement with that, but just indulge me. If you approach it from that perspective, what's the argument that the public interest, the public benefit criterion is not squarely implicated here? Yes. Well, assuming that the request is the fulcrum, and we use that as the starting point, the request itself, paraphrasing, asked for all the documents concerning Mr. Jorimidis. And it's a very broad request and a broad sweeping request. Here, that request could also be looked at in terms of where are the connective tissues between Mr. Jorimidis and the assassination request. Because the request also referenced in the request that the purpose of the request for the documents from Jorimidis was to add further light on the assassination, not just a expose on Mr. Jorimidis' life and his times, but to bring light on the JFK assassination plot. Even under that light, the evidence that Mr. Jorimidis had anything to do with a plot to kill the president is scant at best. The evidence that's presented in this case talks about how Mr. Jorimidis shared a city with Mr. Oswald at a certain point in time that no one knows and no one can demonstrate. And that is one of the nexus that's used to prove that there is a connection between Mr. Jorimidis and Mr. Oswald. It also talks about a career award where the 30-year career of a CIA employee was used to make a very weak connection between a two-year period in that career. And that the CIA therefore, assuming that there was some sort of a legal activity in that two-year period, that the CIA endorsed that illegal activity to have a plot to kill the president. So now we're talking about what in fact was produced. I understand. But even if we are, as to that, as to the award, my understanding from the record is that somebody thought that was interesting because weren't there a bunch of media sources that in fact republished the photograph of the award recipient with the award? Right. My understanding is that the district court was never presented the photograph itself. But there was evidence that there was a photographer at their award ceremony. And there may very well be a photograph out in the open. Oh, is that not in the record? I thought it was represented. Is it at least represented in the briefing that the photograph was reproduced in multiple media sources? Is that not in the record? I'm unaware of that. I was just referencing a footnote in the memorandum and opinion of the district court where it indicated that it did not receive the photograph itself but took it for granted that there was a photographer there and even assuming that there was a photograph. But do you know the record of the case? Are the photographs, the reproductions of the photograph in media sources, were they at least cited? Yeah, they are cited. And there was a photograph that I believe that the appellant is referencing. I'm just simply alluring the court that the district court never had that photograph in its hands according to the footnote that it provided in its memorandum opinion. Right. I mean, I know what the footnote says, but I guess the question is whether the footnote's right based on what the district court was presented with. I understand. So you're not taking the position that the district court did not, in fact, did not have the photographs either before or available to it. You're just saying that the district court indicated in its opinion that it was unaware of that. That's exactly right, Your Honor. Okay. That's what the district court represented. Yeah. But even assuming the existence of the photograph, I think that the analysis is correct. And I don't want to provide any short shrift to the court's hypothetical of ex-ante consideration of what's before the actual production and the request itself. As the court indicated, we do disagree with that formulation, but the downside of having a regime where the request itself is the fulcrum does open the door to a broad request such as the one we have here before us. That doesn't depend upon how serious the connection must be between the documents requested and some at least plausible or not completely implausible theory of actually an involvement with the Kennedy assassination. Right? Right. So the dichotomy between plausible and implausible, those are considerations, of course. I think the district court used a different standard as to whether or not it was likely to add to the public fund, not whether it was truthful or not truthful in terms of its actual content or its result. The district court, I think, specifically demurred when it broke the subject of whether the information itself was truthful or not truthful, but instead tried to focus on whether or not the information, assuming the truthfulness of it, whether the information itself and getting back to the ex-post production, whether that, those documents, those four documents added something to the public discourse that could have helped inform the public at large. About the political choices it needs to make. And the court is absolutely right that the topic area of this needs to be separated from the actual production of what we have before us after a decade of litigation. And on this particular case, after the decade of the, from the very beginning of the FOIA request until now, and over 1,200 documents being produced, we reduced down to four documents. And those four documents pertain to the topic areas I outlined before, which is the career award and travel forms. And none of those documents have the connective tissue that you find in Davey. In Davey, there are, there's no dispute, at least the court found that there was no dispute, that the connective tissue was there. And that there was a, there was a focus of the produced documents that bared on the actual truth or the falsity of the event in question. And that was the fulcrum that that court used in order to make the decision as to whether or not there was a public benefit. Here we have a dispute. One of the points that was made in Davey, and echoed, I think, in our prior decision in this case that affected the remand, was that, to use your language, the connective tissue, you may not know at one particular point in time what the connective tissue is. It might spawn subsequent inquiries that in turn spawn subsequent inquiries that then draw the connections. And that is at least a possibility in a situation like this where we're already talking about, you know, I don't want to use a pejorative term, but we're talking about conspiracies to some extent by nature. And so part of the enterprise here is we want to look to see whether there happen to be travel documents that put people in the same place in the same rough window of time. And if there are, then maybe that leads somebody to look into and scrutinize it a little bit more. And then they're not going to look at the government. Maybe they go interview some people that were on site, and that spawns some things. And so part of the reason that I think a lot of Davey suggests looking ex ante is married with this proposition that you don't know the connective tissue based on a particular frame of reference and point in time. You have to just understand that they could lead to subsequent inquiries that could bear fruit. And I want to address that point in two ways. First, I want to get to what I believe the case law in the circuit talks about in terms of the purpose of the actual fee petition in FOIA and the fact that the initial purpose of the FOIA fee shifting provision was to not incentivize the requesters to come forward with legitimate requests or otherwise, but to incentivize the agencies not to hide behind bureaucracy and essentially wait out those requesters who could not afford the lengthy litigation. And so when looked at it from that point of view, it's not focused on the request at all in terms of the reason or the trigger for the attorney's fees provision to kick in. But furthermore, in a case like this, you're absolutely right. You'll never know when you're requesting what the documents will produce. But if you ask a broad enough question and if the chances are great that you will find something that's been withheld that will be produced, and at that point you are considered a substantially prevailing party and you're in this situation again. And I think maybe more so than maybe the appellant wants to admit that this is a repeatable situation where after a decade of litigation, you have four documents that have weak to tenuous connections to the actual event at hand and the fees are on the table for the taxpayer to pay at that point. But it only took a decade and there were only four documents because it's not entirely the requester's fault, right? No. I mean, we're only here because we went to litigation in the first place. Yes. If everything had been done in the way that it turned out at the back end, then we never would have gone to litigation. Well, you know, that brings up the point of the agency's conduct, correct? Because in this case, the agency had a reasonable basis to withhold certain documents or to not search certain indices. Because of case law that was at the time relevant and controlling in this circuit, the agency resisted that search. And with the guidance of this court and the changing of that precedent, the agency complied. You know, it was things like that in the initial shifting of the request to NARA. You know, the district court found that that was also reasonable too, given the fact that this was not an expose on joint needies, but in fact an effort to bring light to the JFK assassination that there is a repository that is actually meant to help the citizens to find information in that sense. So it wasn't as if the agency gave a completely irrelevant source to go to. So those things that did elongate this process, but it was all along the lines of a reasonable conduct that is also one of the factors in dealing with the fee petition. And it goes to the other point that, you know, even setting aside the public benefit factor, there are three other factors that, you know, the district court found in the favor of the defendant as well. And of those factors, you know, only one can arguably be dispositive in these kind of cases, and that's the reason of the agency's conduct. And I don't believe that there was any serious argument that this agency acted in an irrational way or some sort of nefarious way to frustrate the purposes or the attempts of the plaintiff without cause. So understanding that context of the purpose of the fee shifting provision and the weakness of the connection in this particular case, and the fact that in general these kinds of inquiries need to be very fact-specific, case-specific, and review the documentation. Having a case law that says that, well, de-emphasizes the results and just talks about the intent of the request, doesn't adequately protect against the abuse of that possibly happening down the road with broad requests and confusing and inconsistent results as a result of the fact that the requests themselves are not tenable for the agency to search such a broad request. I don't think anyone is suggesting that the intent of the requester is controlling and perhaps not even relevant. The question is the objective link of the request to something that might be of public interest. Yes, and in this case, you know, the linkage to the JFK assassination obviously makes a connection to a very important topic area. And if that's the topic area, then there are certain things that are so de minimis as to the actual results of that search that should cause for the public benefit factor to be called into question. And in this case, there's no question that, you know, while reasonable minds can differ as to the import of the conclusion of what these documents pretend, that is exactly what the district court is called upon to do, which is in their zone of discretion to determine what is actually connected to the overarching subject matter. In this case, the JFK assassination. And the district court determined that travel records and a career medal for a lifelong career in CIA are too tenuous and too scant to justify a public benefit analysis in the favor of the appellant. How does the if we're talking about degrees of removal or degrees of remoteness in our initial opinion in this case, or at least in the 2007 opinion in this case, part of what came up because of the way the statutes work together was how remote the connection was between the request made by Morley and the function of the church committee. And I think that the decision that we handed down said that, well, if it was only a remote relationship, that would be one thing. But it's not merely a remote relationship. It's actually a pretty direct relationship to what the church committee was investigating. And if that's that's something of public interest, because that committee dealt generally with the subject of assassinations. So is there something to the fact that our prior opinion in this case documented a direct connection rather than a remote connection, at least vis-a-vis the church committee? So to the extent that the church committee is involved, then we're we're talking about the investigation of the assassination. Yeah. And the subject matter of this litigation is joint needs. And the involvement of Mr. Johnny's in that process has already been exposed prior to this litigation ever even even commencing. And the CIA has already acknowledged the joint needs served on or was a liaison with the House Select Committee in that in that capacity. So we get to the fact of whether this is new information now. Again, where the joint needs connection with the investigation is really new information, even though, as the court says, it is a direct connection. Is this new information adding to the actual fund of the public information? And that's what we say. We've argued that. No, that it's this is this is not new information, as Davey indicated. It needs it should be. It should be new information that it was. While directly connected, it wasn't new to add to the fund of public information. It didn't turn out to be now. Right. You're absolutely right. It didn't turn out to be new. If the if the lens is, what did the requester know at the time it asked versus what it actually turned out to be? You're absolutely right. It turned out not to be new. But the but because the information was already in the public record. The requester had a chance to determine that this was this was at least on his face, that this information was already out there. The subject matter of Mr. Joe and his involvement investigation was already out in the public domain. So if there are no I see my time is elapsed. If there are no further questions, we ask the court to affirm the district court's decision. Thank you. We'll we'll give you two minutes for rebuttal.  I just want to say that it's somewhat mind boggling for me to hear that there is no connection, significant connection between the newly released information and the Kennedy assassin assassination. We have the fact that during the proceedings of the Assassination Records Review Board, the CIA could not locate the case officer who was in charge of the DRE. The House Select Committee had tried to find him. The Jefferson Morley was eventually able to get the Assassination Records Review Board to produce some, some documents, and eventually Joe Anides was identified. However, it was not known that Joe Anides was working in an undercover capacity at the same time that he was working with the Congressional Committee investigating the assassination. That the Congressional Committee was inquiring as to who the case officer was, and he did not inform them and the CIA did not inform them. And that he had a direct conflict. Joe Anides had a direct conflict of interest here because he was the person responsible for paying funds that to the DRE with which Oswald was involved. We have the fact that there was an award of a medal to Joe Anides, which covers the period of time that he was the liaison with the House Select Committee, not informing them what it was his obligation to inform them of. That is a very direct, very substantial connection that is new information. And under any definition of what potentially contributes to the political, to the public benefit, it meets that standard. The same with the travel records. The CIA disputes on the basis of what evidence we don't know because there's been no affidavit in the record, declaring that the travel record forms say what the government now represents to the court. They say the records themselves say travel records. And regardless of whether or not they establish precisely what the CIA claims they did or what Morley thinks they did, they establish that Joe Anides was in New Orleans on home leave. And that is critically important because the DRE activities and the Oswald activities leading up to the assassination of President Kennedy were carried out in part in New Orleans and in part in Miami. So there's just simply no question that this is all related. Now, one final point. On the issue of the photograph, the judge said he didn't have a copy of the actual photograph. What he had was a citation to the website for the New York Times. The print edition of the New York Times did not carry the photograph. The digital version of it did. And the link to the digital version was put in the record for the district court. So it is straining credulity to claim that that was not part of what was before the court. Thank you.  Case is submitted. Thank you.
judges: Srinivasan, Williams, Ginsburg